# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| WESLEY CRAWFORD | * | CIVIL ACTION NO. 08-0463 |
| VERSUS | * | JUDGE JAMES |
| CLAYTON DEHL, ET AL. | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment filed by defendant JohnsonDiversey, Inc. ("JDI"). (Doc. #18). The plaintiff, Wesley Crawford, opposes the motion. (Doc. #22). JDI contends that the exclusivity provision of the Louisiana Products Liability Act (the "LPA") precludes each of Crawford's claims. In addition, JDI contends that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. For reasons given below, it is recommended that the motion be **DENIED**.

## BACKGROUND

Crawford alleges that he was injured when he came into contact with hydrochloric acid manufactured by JDI. (Doc. #1-2, ¶ 3). Crawford alleged the following material facts in his state court petition:

> defendant, Thomas Fulmer was operating a vehicle pulling box van trailers filled with a 98% hydrochloric acid chemical, owned by defendant, AAA Cooper Transportation ["ACT"], along Interstate 20 in Ouachita Parish, Louisiana. . . . Fulmer noticed a leak from one of the box van trailers he was pulling and contacted defendant, Alan Love, Regional Safety Director for [ACT]. . . . Love, advised . . . Fulmer, to go ahead and drive the leaking trailer to the Monroe, Louisiana, [ACT] property. Upon arrival at the Monroe property . . . Crawford in the course and scope of his employment with [ACT] was instructed by . . . Love to open the doors of the trailer, which was fuming hydrochloric acid vapors, and place oil dry inside and around the leaking trailer. Petitioner did as he was instructed with only a dust mask and splash protection which caused serious injuries to petitioner.

*Id.* Based on these allegations, Crawford alleged the following claims against JDI:

    A. Failure to properly load and secure hazardous materials;

    B. Failure to keep and/or transport its hazardous materials in a safe manner;

    C. Failure to properly train its employees to deal with hazardous materials; and

    D. All acts of negligence proven at trial.

(Doc. #1-2, ¶ 15). Notably, Crawford alleges no claims against JDI under the Louisiana Products Liability Act (the "LPLA").

The following facts are not in dispute:[1]

1. Hydrochloric acid is manufactured and later labeled under Dubois Chemical's name.

2. Dubois Chemical markets the hydrochloric acid under the product name "Enviroclean."

3. On March 13, 2007, ten (10) fifty-five gallon drums of Enviroclean were ordered by Peavey Electronics, located in Meridian, Mississippi.

4. The Enviroclean drums were shipped by ACT from Dubois Chemical's Dallas, Texas warehouse.

5. On March 14, 2007, during transit, one of the Eviroclean drums was punctured and the hydrochloric acid manufactured by Dubois Chemical was released.

6. Under Louisiana law, JDI is the manufacturer of the hydrochloric acid that allegedly injured Crawford.

(Docs. #22-2; #18-7).

---

[1] "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." FED. R. CIV. P. 56(d)(1).

## LAW AND ANALYSIS

### I. Federal Procedural Law

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, the parties agree that Louisiana law applies. (Docs. #18-6, p.6; #22, p.4); *see also Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled).

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(b). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

### II. The LPLA Does Not Preclude Crawford's Claims Against JDI

JDI contends that the LPLA's exclusivity provision precludes all of Crawford's negligence claims. Because there is no Louisiana Supreme Court case that has ruled on this precise issue, this court must make an *Erie* guess. *Vanderbrook*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000). The Fifth Circuit has recently dictated how courts in this circuit are to make *Erie* guesses:

we must . . . determine, in our best judgment, how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*Vanderbrook*, 495 F.3d at 206 (internal citations and quotation marks omitted).

Accordingly, this court must begin by examining the applicable primary source of law. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE ANN. art. 9. At the same time, courts are "to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings." *Savoie v. Rubin*, 820 So. 2d 486, 488 (La. 2002), *quoted in Louisiana v. Shaw*, 969 So. 2d 1233, 1244 (La. 2007); *but see* LA. REV. STAT. ANN. § 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").

The exclusivity provision of the LPLA states that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." LA. REV. STAT. ANN. § 9:2800.52.[2]

---

[2] To prevail under the LPLA, a plaintiff must demonstrate that

(1) the product is unreasonably dangerous in construction or composition as provided in LA. REV. STAT. ANN. § 9:2800.55;
(2) the product is unreasonably dangerous in design as provided in LA. REV. STAT. AN. §9:2800.56;

4

JDI construes the exclusivity provision to preclude any non-LPLA claim against JDI that alleges damages or injuries caused by JDI-manufactured hydrochloric acid. Under JDI's construction, the statute would preclude the non-LPLA claims regardless of the underlying theory of recovery. When this construction is taken to its logical end, it leads to absurd consequences. Indeed, any Louisiana manufacturer would be able to act with (civil) immunity when using an object of its own making. Gun manufacturers could fire their guns in crowded places and anvil-makers could let their anvils fall from roof tops. Injured parties would be forced to sue under the LPLA – which would provide no recourse for the injuries sustained – or have their suits barred by the exclusivity provision. Given these absurd consequences, this court must reject JDI's proposed construction of the exclusivity provision and instead interpret the law so as to give it the meaning which the lawmakers obviously intended.

The exclusivity provision is better construed as barring only those claims against manufacturers in which the defendant's capacity as manufacturer[3] is essential. This interpretation of the exclusivity provision is supported by the only Louisiana court case on point. In *Lavergne v. America's Pizza Co.*, 838 So. 2d 845 (La. App. 3 Cir. 2003), the court dealt with facts similar to those presented in the instant case. The plaintiffs alleged that a waitress acted negligently by placing a cup of heated dipping sauce within reach of their three-year old son, who

---

      (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in LA. REV. STAT. ANN. § 9:2800.57; or
      (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in LA. REV. STAT. ANN. § 9:2800.58.

*Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007).

[3] "Manufacturer" is a term of art under the LPLA. Its broad definition can be found in LA. REV. STAT. ANN. § 9:2800.53(1).

5

subsequently burned himself with the sauce. *Id.* at 847. The plaintiffs sued the waitress's employer based on its vicarious liability for its employee's negligence. *Id.* at 848. The defendant employer argued that, under the LPLA's exclusivity provision, it could not be sued for negligence because it had manufactured the dipping sauce. *Id.* The *Lavergne* court rejected the defendant manufacturer's argument. *Id.* In relevant part, the court wrote

> Here, America's Pizza wears two hats; one as the supposed manufacturer of the sauce, and another as the employer of a potentially negligent employee. While the LPLA's exclusivity provision eliminates a general negligence cause of action for damages *caused by a product*, it does not eliminate the liability of a manufacturer for damages *caused by the negligent use of its product* by one of its employees.

*Id.*

As noted, this court is not strictly bound by a Louisiana Court of Appeals decision. Nonetheless, the undersigned finds the reasoning of the *Lavergne* court to be sound and concludes that the Louisiana Supreme Court would agree in both the result and the rationale.

Here, JDI is alleged to have acted negligently when it loaded, secured, kept, transported, and trained its employees to deal with the hydrochloric acid. Not one of these claims requires JDI to have been the manufacturer of the hydrochloric acid in question. Consequently, the undersigned's *Erie* guess is that the Louisiana Supreme Court would reject the contention that the LPLA precludes Crawford's claims.

### III. JDI Is Not Entitled To Judgment As A Matter Of Law

JDI argues that the "sole contested issue of fact" in this case is immaterial, entitling JDI to judgment as a matter of law. The contested issue of fact to which JDI refers is the identity of the person(s) who loaded and secured the hydrochloric acid before ACT transported it. JDI argues that the identity of the person(s) is irrelevant because ACT, as the transporter, was

required by Louisiana law to ensure that the chemicals were secure.  JDI argues that since ACT had the duty to ensure the security of the chemicals for transport, any person who improperly loaded or secured the chemicals before ACT took possession of them is free from liability.  This argument completely overlooks the fact that both parties, JDI and ACT, can be deemed liable under Louisiana law for their respective negligence.  *See* LA. CIV. CODE ANN. art. 2323 (comparative fault); LA. CIV. CODE ANN. art. 2324(B) ("liability for damages caused by two or more persons [not acting in a conspiracy] shall be a joint and divisible obligation.").  As a result, this argument is without merit.

## CONCLUSION

For these reasons, the undersigned recommends that the motion for summary judgment, (Doc. #18), be **DENIED**.  Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

**THUS DONE AND SIGNED** this 21st day of July, 2008, in Monroe, Louisiana.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE